**Debra Lea MCSHEFFREY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 02–1514 C.**

United States Court of Federal Claims.

Jan. 14, 2004.

---

Debra Lea McSheffrey, Ocala, FL, pro se.

Michael Francis Kiely, Civil Practice Section, U.S. Postal Service, Washington, DC with whom were Peter D. Keisler, Assistant Attorney General, and Kathleen Kohl, Civil Division, U.S. Department of Justice, Washington, DC and Eric J. Scharf, Civil Practice Section, U.S. Postal Service, Washington, DC, for defendant.

**OPINION AND ORDER**

HEWITT, Judge.

This case is before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted. On August 7, 2003, the court granted in part and denied in part defendant's motion to dismiss. *McSheffrey v. United States*, 58 Fed.Cl. 21, 25–26 (2003). For the portions of defendant's motion to dismiss that the court denied, it ordered plaintiff to show cause why the court should not grant defendant's motion to dismiss. *Id.* at 26. For the following reasons, the court DENIES the remainder of defendant's motion to dismiss.

## I. Background [1]

On January 23, 1997, a Contracting Officer of the United States Postal Service terminated Contract No. HCR 18660, a contract between plaintiff and the Postal Service, for default. *McSheffrey*, No. 4061, 1998 WL 320278, at *2, 1998 PSBCA LEXIS 16, at *4 (June 18, 1998). Plaintiff appealed this decision to the Postal Service Board of Contract Appeals (PSBCA or Board). *Id.* at *2, 1998 PSBCA LEXIS 16, at *1. The Board decided that plaintiff "was clearly in breach of her contract obligations, and the contracting officer did not abuse his discretion in terminating the contract for default." *Id.* at *3, 1998 PSBCA LEXIS 16, at *8–*9. The Board added that it was "without jurisdiction . . . to hear the claims for compensation contained in [plaintiff's] [c]omplaint" and dismissed those claims without prejudice. *Id.* at *3, 1998 PSBCA LEXIS 16, at *9.

When plaintiff brought her claims to this court, defendant filed a motion to dismiss on the ground that "plaintiff ha[d] already litigated the default termination [of Contract No. HCR 18660] before the Postal Service Board of Contract Appeals and the Board issued a decision finding the default termination was proper." Defendant's Motion to Dismiss (Def.'s MTD) at 1. In its August 7, 2003 decision, this court granted defendant's motion to dismiss plaintiff's claims for liqui-

---

**1.** The court only discusses the facts necessary to the present decision. For a more extensive factual background, see *McSheffrey*, 58 Fed.Cl. at 22–24.

dated and compensatory damages in the amount of $9,252.61 and $2,198.16, respectively, and plaintiff's claim for bid wages in the amount of $17,220.00 "to the extent plaintiff's claim relies on the theory of wrongful termination of the Contract [No. HCR 18660] but not to the extent that the 'misrepresentation of fact' claimed by plaintiff refers to a matter not litigated in the case before the Board." *McSheffrey*, 58 Fed.Cl. at 25–26. The court denied defendant's motion to dismiss plaintiff's claims for suspended funds in the amount of $641.13 plus interest and to remove charges in the amount of $4,729.98. *Id.* at 26. The court then ordered plaintiff "to show cause why plaintiff's claims for suspended funds, wrongfully levied charges, and bid wages should not be dismissed as barred by the doctrine of collateral estoppel because the Contract [No. HCR 18660] has previously been determined to be properly terminated for default." *Id.* at 26. The court now has before it the briefing on the show cause order and evaluates whether plaintiff's remaining claims should be dismissed.

## II. Jurisdiction

As an initial matter, this court must determine whether it has subject matter jurisdiction over plaintiff's remaining claims for suspended funds, wrongfully levied charges and bid wages. Determining whether subject matter jurisdiction exists is an " 'inflexible' " threshold matter. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s]' from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.' " (quoting *Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884))).

The Court of Federal Claims, under the Tucker Act, 28 U.S.C. § 1491 (2000), has jurisdiction over disputes arising under the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (2000). *See* 28 U.S.C. § 1491(a)(2) ("The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under ... the Contract Disputes Act of 1978, including a dispute concerning termination of a contract ...."). The present case arises under the CDA because it involves an "express ... contract ... entered into by an executive agency [the United States Postal Service] for ... the procurement of services." *See* 41 U.S.C. § 602(a) (describing the applicability of the CDA); *id.* § 601(2) (defining "executive agency" to include the United States Postal Service). However, a prerequisite to the court's exercise of CDA jurisdiction is that the claim must have been submitted to a contracting officer and a decision rendered by that officer. *See* 28 U.S.C. § 1491(a)(2) (stating that the Court of Federal Claims only has jurisdiction over disputes "on which a decision of the contracting officer has been issued under [the CDA]."); *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1267 (Fed.Cir.1999) ("[T]he Tucker Act gives the Court of Federal Claims jurisdiction over CDA claims only when 'a decision of the contracting officer has been issued under section 6 of [the CDA].' " (quoting 28 U.S.C. § 1491(a)(2)). The CDA itself also requires that a contract claim be submitted to the contracting officer before an appeal may be taken. *See* 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.").

Plaintiff submitted her claims for suspended funds, wrongfully levied charges and bid wages to the contracting officer, Peter J. Bacola, by letter dated June 16, 2001. *See* Amended Complaint (Am.Compl.) Ex. 1 (containing Letter from McSheffrey to Bacola of 6/16/01). The contracting officer issued a final decision denying each of plaintiff's claims in a letter dated July 27, 2001. *See id.* Ex. 2 (containing Letter from Bacola to McSheffrey of 7/27/01). Because a contracting officer has rendered a final decision on plaintiff's suspended funds, wrongfully levied charges and bid wages claims, this court can exercise jurisdiction over these claims.

## III. Discussion

### A. Standard of Review

A motion to dismiss for failure to state a claim upon which relief can be granted is

treated as a motion for summary judgment under Rule 56 if "matters outside the pleading are presented to and not excluded by the court." Rules of the United States Court of Federal Claims (RCFC) 12(b)(6). Both parties included materials outside of the pleadings in their briefing. Therefore, the court addresses defendant's motion as a motion for summary judgment under Rule 56.

Under Rule 56, summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact that might significantly affect the outcome of the litigation is material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed.Cir.1987). The movant is also entitled to summary judgment if the non-movant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run, *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984).

■ The basis of defendant's motion to dismiss is the argument that the doctrine of res judicata bars plaintiff from bringing her claim in this court. Def.'s MTD at 1. Defendant argues that the issues upon which plaintiff bases her complaint "have been previously litigated before the Postal Service Board of Contract Appeals." *Id.* at 4. Because defendant appeared to be arguing for "issue preclusion" or "collateral estoppel," the court examined defendant's motion under that rubric. *McSheffrey*, 58 Fed.Cl. at 25. Collateral estoppel requires that four elements be met: (1) the issue must be identical to that in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue in the prior action was necessary and essential to the resulting judgment; and (4) the party defending against preclusion must have had a full and fair opportunity to litigate the issue in the prior action. *Banner v. United States*, 238 F.3d 1348, 1354 (Fed. Cir.2001). The court now turns to an examination of whether plaintiff is barred by collateral estoppel from raising the issues the court ordered plaintiff to address in its show cause order.

### B. Collateral Estoppel

#### 1. Suspended Funds

■ Plaintiff seeks damages for suspended funds in the amount of $641.13 plus interest. Am. Compl. ¶ II.1. Plaintiff argues that there is no relationship between the PSBCA's default termination and the suspended funds, Plaintiff's Response to Court Opinion and Order (Pl.'s Resp.) at 1, because the suspension of funds did not occur "within proper guidelines and in an allowable time frame," Plaintiff's Final Response (Pl.'s Final Resp.) at 2. Defendant contends, however, that the retention of the suspended funds was directly related to the default termination because, in response to plaintiff's claim, the contracting officer wrote a letter to plaintiff stating that "the suspended funds 'were applied to the damages owed by you to the United States Post Service following your abandonment of service on HCR 18660.'" Defendant's Response to Plaintiff's Response to the Court's Show Cause Order (Def.'s Resp.) at 1 (quoting Am. Compl. Ex. 2 (Letter from Bacola to McSheffrey of 7/27/01, at 1)). While plaintiff cannot challenge the default termination, she can challenge the assessment of damages based on that default termination because the PSBCA did not address that issue. Defendant concedes this point. *See* Def.'s Resp. at 2 (stat-

ing that the amount of damages based on the default termination "appears to be an issue not controlled by collateral estoppel, and one that is still properly before the Court"). Because plaintiff's claim for suspended funds was not previously litigated, defendant's motion with respect to plaintiff's claim for suspended funds is DENIED.

### 2. Wrongfully Levied Charges

Plaintiff asks the court to "[r]emove charges in the amount of $4,729.98" from agency records. Am. Compl. ¶ II.5. Plaintiff argues that the levied charges are "unrelated and apart from the default termination and were never recognized by any tribunal in this matter." Pl.'s Resp. at 2. Plaintiff appears to argue that the levied charges are not related to the default termination because the charges were "untimely levied." Pl.'s Final Resp. at 2. Defendant agrees that "the [Postal Service] Board of Contract Appeals had not addressed this issue in its decision" and, again, concedes that the amount of damages resulting from the default termination "remains an issue in this case." Def.'s Resp. at 2. Plaintiff's argument that the charges are unrelated to the default termination because they were not properly assessed is not barred by collateral estoppel because she does not appear to be challenging the PSBCA's default termination, but rather the assessment of charges, which the Board did not address. Defendant's motion to dismiss with respect to plaintiff's claim for wrongfully levied charges is DENIED.

### 3. Bid Wages

Plaintiff seeks bid wages based on the allegation that the Allegheny Area Distribution Networks Office (DNO) provided the Atlanta Area DNO with "wrongfully conveyed information adverse to [p]laintiff," Pl.'s Resp. at 2, and this information caused the Atlanta Area DNO not to award Contract No. 328EG to plaintiff, Pl.'s Final Resp. at 4. *See also* Am. Compl. ¶ II.4 ("[N]on award of contract [328EG was] caused by ... misrepresentation of fact conveyed to Atlanta Area DNO by the Allegheny Distribution Networks Office."). Plaintiff asserts that the Allegheny Area DNO provided adverse information to the Atlanta Area DNO "prior to any alleged infractions by [p]laintiff concerning [Contract No.] HCR 18660." [2] Pl.'s Final Resp. at 4. In sum, plaintiff states, "The termination of HCR 18660, in and of itself, has no bearing whatsoever on non-award of contract which resulted in loss of bid wages. Plaintiff's loss of bid wages were due solely to misrepresentation of fact." *Id.* at 4. Defendant contends that "plaintiff's claim for bid wages is directly dependent upon the theory that her contract was wrongfully terminated." Def.'s Resp. at 3. Here, the parties' dispute appears to center on a timing issue, that is, when did the Allegheny Area DNO provide the adverse information to the Atlanta Area DNO? *Compare* Pl.'s Final Resp. at 4 (stating that plaintiff was in "total compliance with HCR 18660 when the Allegheny Area DNO provided negative performance information to the Atlanta Area DNO"), *with* Def.'s Resp. at 3 (stating that the adverse information was sent to the Atlanta Area DNO "more than two months after the Allegheny DNO had terminated for default plaintiff's contract on January 23, 1997"). This issue is central to a decision regarding whether the Allegheny Area DNO misrepresented information to the Atlanta Area DNO. The PSBCA decision did not address this issue. Plaintiff is not collaterally estopped from bringing her claim for bid wages before

---

**2.** Because plaintiff is appearing pro se, the court construes her argument that defendant "wrongfully conveyed information adverse to [p]laintiff," Pl.'s Resp. at 2, liberally to be a claim that the government acted in bad faith in not awarding her the contract. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (stating that court filings by pro se plaintiffs are held to "less stringent standards" than those filed by lawyers). Assuming this claim is timely and otherwise properly before the court, *see, e.g., ABF Freight Sys., Inc. v. United States,* 55 Fed.Cl.

392, 399–400 (2003) (discussing whether a bid protest was timely), the court notes that in evaluating the government's actions in awarding a bid, there is a "strong presumption that government contract officials exercise[d] their duties in good faith." *Am–Pro Protective Agency, Inc. v. United States,* 281 F.3d 1234, 1239 (Fed.Cir. 2002). To overcome this presumption, plaintiff must ultimately prove by clear and convincing evidence that the government acted in bad faith. *Id.*

**332**

the court and defendant's motion to dismiss plaintiff's claim for bid wages is DENIED.

### IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss plaintiff's claims for suspended funds, wrongfully levied charges and bid wages is DENIED. The court STRIKES from plaintiff's Amended Complaint the following paragraphs: I.1, I.2, II.2 and II.3. Defendant shall, on or before Wednesday, February 18, 2004, file its answer to the remainder of plaintiff's Amended Complaint. After defendant files its answer, the parties shall submit a Joint Preliminary Status Report in accordance with RCFC App. A ¶ 4. The parties are encouraged to consider alternative dispute resolution to resolve the outstanding issues in this case. *See* RCFC App. H.

IT IS SO ORDERED.